# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

CEDRICK BROWN,

                Petitioner,

    v.

J. HARTLEY, Warden,

                Respondent.

_____/

1:10-cv-00323 OWW GSA HC

FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## RELEVANT HISTORY[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction in Kern County Superior Court in 1985 of first degree murder.  He is serving a sentence of twenty-five years to life with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he claims the California Board of Parole Hearings ("Board") violated his due process rights in its August 26, 2008, decision finding Petitioner unsuitable for parole.  Petitioner contends there was no evidence to

---

[1] This information is taken from the state court documents attached to Respondent's answer and are not subject to dispute.

support the Board's conclusion that he is a current danger if released from prison.  He claims the Board did not provide him with individualized consideration of all relevant factors.  He claims the Board continues to rely on unchanging factors to deny him parole when uncontroverted evidence of rehabilitation exists.

Petitioner filed a habeas court petition challenging the Board's 2008 decision in the Kern County Superior Court on February 25, 2009.  The petition was denied in a reasoned decision on April 15, 2009.  On June 2, 2009, Petitioner filed a habeas petition in the California Court of Appeal, Fifth Appellate District.  The appellate court denied the petition on August 21, 2009. Petitioner then filed a habeas petition in the California Supreme Court on August 31, 2009.  The petition was summarily denied on November 10, 2009.

Petitioner filed the instant federal petition for writ of habeas corpus on February 24, 2010. Respondent filed an answer to the petition on July 26, 2010.  Petitioner filed a traverse on August 11, 2010.

## STATEMENT OF FACTS[2]

Ms. Rupe was seventy-seven years old at the time of her demise.  Witnesses saw Petitioner grab a purse from Ms. Rupe causing her to lose her balance.  Ms. Rupe refused to relinquish her purse willingly, and witnesses saw her being dragged until she did so.  Petitioner was arrested in an apartment complex hiding in a closet after he had used a restroom and rummaged through her purse looking for money to support his cocaine habit.  It was his intention to obtain cocaine to share with a female friend.  Although Ms. Rupe did not immediately die, she languished in a convalescent home, had hip surgery, and developed pneumonia and heart failure due to a blood clot directly attributable to the fractured hip suffered during the robbery.

## DISCUSSION

I.    Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

---

[2] This information is derived from the summary of the crime set forth in the opinion of the Kern County Superior Court. (See Resp't's Answer Ex. 2.)

1  enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); <u>Jeffries</u>

2  <u>v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th

3  Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>,

4  521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

5  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

6  provisions.

7         Petitioner is in custody of the California Department of Corrections and Rehabilitation

8  pursuant to a state court judgment.  Even though Petitioner is not challenging the underlying state

9  court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because

10  he meets the threshold requirement of being in custody pursuant to a state court judgment. <u>Sass</u>

11  <u>v. California Board of Prison Terms</u>, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* <u>White v.</u>

12  <u>Lambert</u>, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a

13  habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the

14  petition is not challenging [her] underlying state court conviction.'").

15        The instant petition is reviewed under the provisions of the Antiterrorism and Effective

16  Death Penalty Act which became effective on April 24, 1996.  <u>Lockyer v. Andrade</u>,  538 U.S. 63,

17  70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

18  adjudication of the claim "resulted in a decision that was contrary to, or involved an

19  unreasonable application of, clearly established Federal law, as determined by the Supreme Court

20  of the United States" or "resulted in a decision that was based on an unreasonable determination

21  of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

22  § 2254(d); <u>see</u> <u>Lockyer</u>, 538 U.S. at 70-71; <u>Williams</u>, 529 U.S. at 413.

23        "[A] federal court may not issue the writ simply because the court concludes in its

24  independent judgment that the relevant state court decision applied clearly established federal

25  law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Id</u>. at 411.

26  A federal habeas court making the "unreasonable application" inquiry should ask whether the

27  state court's application of clearly established federal law was "objectively unreasonable."  <u>Id</u>. at

28  409.    Petitioner has the burden of establishing that the decision of the state court is contrary to

1    or involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v.</u>

2    <u>Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

3    states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

4    state court decision is objectively unreasonable.  <u>See</u> <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th

5    Cir.2003); <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th Cir.1999).

6    II.     <u>Review of Petition</u>

7         There is no independent right to parole under the United States Constitution; rather, the

8    right exists and is created by the substantive state law which defines the parole scheme.  <u>Hayward</u>

9    <u>v. Marshall</u>, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing <u>Bd. of Pardons v. Allen</u>, 482

10    U.S. 369, 371 (1987); <u>Pearson v. Muntz</u>, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May

11    24, 2010) (citing <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174

12    (2005)); <u>Cooke v. Solis</u>, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010).

13    "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state

14    statutes may create liberty interests in parole release that are entitled to protection under the Due

15    Process Clause." <u>Bd. of Pardons v. Allen</u>, 482 U.S. at 371.

16         In California, the Board of Parole Hearings' determination of whether an inmate is

17    suitable for parole is controlled by the following regulations:

18          (a) General. The panel shall first determine whether the life prisoner is suitable for
19      release on parole. Regardless of the length of time served, a life prisoner shall be found
      unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an
20      unreasonable risk of danger to society if released from prison.

21          (b) Information Considered. All relevant, reliable information available to the
      panel shall be considered in determining suitability for parole. Such information shall
22      include the circumstances of the prisoner's social history; past and present mental state;
      past criminal history, including involvement in other criminal misconduct which is
23      reliably documented; the base and other commitment offenses, including behavior before,
      during and after the crime; past and present attitude toward the crime; any conditions of
24      treatment or control, including the use of special conditions under which the prisoner may
      safely be released to the community; and any other information which bears on the
25      prisoner's suitability for release. Circumstances which taken alone may not firmly
      establish unsuitability for parole may contribute to a pattern which results in a finding of
26      unsuitability.

27    Cal. Code Regs. tit. 15, §§ 2402(a) and (b).  Section 2402(c) sets forth circumstances tending to

28    demonstrate unsuitability for release.  "Circumstances tending to indicate unsuitability include:

(1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.'

(4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing.  Cal. Penal Code § 3041.5.  If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010).  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence.  Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings."  In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the circumstances of the commitment offense, the Lawrence Court concluded that

although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense

6

remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A.     State Court Decisions

The superior court provided the last reasoned decision, rejecting Petitioner's claim as follows:

Petitioner claims remorse for the crime and his skills as an auto mechanic, a metal fabricator and construction worker make him a viable parolee. He has been disciplinary free from major rules violations known as (115s) since 1998. He has been drug and alcohol free, and attended anger management course such as breaking barriers. He is active in Narcotics Anonymous classes.

The Board of Hearings and Paroles, while acknowledging his gains and realistic employment and residential plans, found that petitioner lacks insight into the commitment offense in that to this day he continues to minimize his role in the commitment offense. For example, he continues to adhere to the defense expert's theory that drugs caused Ms. Rupe's death not his robbery. This adherence to the defense expert's opinion is notwithstanding that two countervailing experts opined that the victim's death occurred due to the robbery. A blood clot resulting from her damaged hip eventually cause heart failure and combined with the pneumonia causing her death.

The Board pointed to the psychological report June 3, 2008 by Dr. R. Kendall who pointed out that petitioner needs to get more insight into the commitment offense. Until he does so, he remains a moderate risk to recidivate.

. . . .

Prior court decisions did not disturb parole suitability decisions so long as there was some evidence to support a denial. [Citation.] As the length of confinement grew distancing the commitment offense, courts felt that there must be evidence that parole

candidates no longer remain a threat to public safety. [Citation.]

California's highest court found that the commitment offense alone could be so egregious as to warrant a denial of parole. [Citation.] But relying solely on that offense without consideration of other factors such as social history, parole plans and criminal record could be tantamount to a due process violation. [Citation.] The most recent cases decided by the California Supreme Court dealing with the evaluation of public safety are *In re Lawrence* (2008) 44 Cal.4th 1181, 1205, and *In re Shaputis* (2008) 44 Cal.4th 1241, 1255.

*Lawrence* found due process violations denying parole solely on the commitment offense after the elapse of so much time between the commitment offense and the present when evaluating an inmate's threat to public safety. *Shaputis*, while acknowledging the need to evaluate the threat to public safety, found that if there is a connection between the commitment offense and the present threat to public safety, the commitment offense can be used to deny parole. [Citation.]

Applying both standards to the instant case, petitioner's case is distinguishable from *Lawrence* since petitioner fails to acknowledge his role in the crime even though he claims to accept responsibility for its commission. He continues to deny that his conduct caused Ms. Rupe's death. The psychological report of Dr. Kendall finds that petitioner present a moderate risk to offend again because he minimizes his role in the crime and the role his conduct played in her death.

Apart from the commitment offense, the Board cited his continuing and escalating criminal conduct, his tumultuous social history involving alcohol and drug abuse as additional factors to deny parole. Most telling is that petitioner related during the parole hearing that he paid $900.00 to help his sister with a rental property, but denies paying any restitution to the family notwithstanding a court order. The restitution was $100.00. His actions belie the need to make amends to those he wronged, the 8th precept in self-help for drug and alcohol abusers.

Until petitioner gains insight into the commitment offense and the role drugs played in its commission, he remains a threat to public safety. [Citation.] The Board felt that petitioner did not take ownership of the crime not only intellectually, but in his heart. The claim of acceptance of responsibility was merely a platitude.

What remains unresolved is why the psychological examination in 1999 was optimistic in contrast with the present evaluation. The court is satisfied that the totality of the evidence supports the denial, and the current psychological report is the most recent barometer of petitioner's current insight into the commitment offense.

Under either the *Lawrence* or *Shaputis* standards, petitioner is unsuitable for parole.

B.    2008 Board Decision

The Board found Petitioner unsuitable for parole based on the circumstances of the commitment offense, his prior criminal record, his unstable social history, his negative institutional behavior, his lack of insight and the psychological report.

First, the Board determined the commitment offense was committed in an especially

8

cruel, atrocious or heinous manner.  The Board does not reference any specific factor of unsuitability to support this finding, and none of the enumerated factors set forth in Cal. Code Regs., tit. 15, § 2402(c)(1) are applicable.  Nevertheless, the Board may consider the facts of the commitment offense as relevant information pursuant to Cal. Code Regs., tit. 15, § 2402(b) in its determination of suitability.

The Board next found Petitioner's prior violent criminal history to be an indicator of unsuitability. Cal. Code Regs., tit. 15, § 2402(c)(2).  Petitioner had committed past crimes including theft, carrying a concealed weapon, malicious mischief, battery, and possession of a controlled substance.  Given these offenses, there was some evidence to support the Board's finding.

The Board determined Petitioner's unstable social history also demonstrated unsuitability.  Cal. Code Regs., tit. 15, § 2402(c)(3).  He had a violent history that started as a juvenile which escalated until he committed the instant offense.  He used drugs and alcohol from the age of 11 or 12, and had maintained a cocaine habit spending approximately $1,700.00 per month.  There was some evidence to support this finding.

The Board next found Petitioner had engaged in serious misconduct during incarceration. Cal. Code Regs., tit. 15, § 2402(c)(6).  He had sustained a total of ten (10) serious rules violations and thirteen (13) counseling chronos while incarcerated.  Some of the violations were for drug and alcohol use, and two involved violence, the most recent being in 1997 for battery on an inmate.  In 2004, Petitioner was counseled for violating grooming standards.  The housing sergeant noted that Petitioner was argumentative and unreceptive to the counseling.  These incidents provided some evidence of a current risk of danger.

Next, the Board determined Petitioner's past and present mental state with respect to the commitment offense demonstrated unsuitability.  Cal. Code Regs., tit. 15, § 2402(b).  In particular, the Board found that Petitioner had failed to develop insight into the causative factors of his crime and failed to show an understanding of the triggers that led to the victim's death. This finding is supported by Petitioner's statements to the reviewing psychologist.  Psychologist Dr. R. Kendall concluded that Petitioner posed a moderate overall risk of violent recidivism

which would escalate if Petitioner resumed his drug and alcohol use.  According to Dr. Kendall, Petitioner stated:

> I don't feel that I killed her because my pathologist said that it was the prescription drugs she was getting that caused her to die. My pathologist said that that was the stuff that caused her to die, and not the fall. I guess because I was involved and caused her to fall in the first place, that maybe I guess that I did it.

(See Hearing Transcript at 41.)  At the hearing, Petitioner admitted he had informed his counselor he believed the victim's death should have been attributed to something other than his actions. (See Hearing Transcript at 19.)  When asked by his examiner whether he believed his sentence was fair, Petitioner stated, "No."  (See Hearing Transcript at 42.)  In Shaputis, the California Supreme Court stated that "[a]n inmate's version of the offense may indicate a lack of insight and provide a nexus between the offense and his current dangerousness." In re Shaputis, 44 Cal.4th 1241, 1260 (2008).  Here, there is certainly some evidence to support the Board's finding that Petitioner's minimization of his fault in causing the victim's death demonstrates his current dangerousness.

The Board also considered Petitioner's positive factors.  He was commended for his vocational achievements and marketable skills.  He had viable parole plans.  He was commended for obtaining his GED.  He had been involved in self-help programming such as Alcoholics Anonymous and Narcotics Anonymous.  Nevertheless, after considering the factors in favor of suitability, the Board concluded that the positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability.  The Board determined that the circumstances of Petitioner's commitment offense, his prior criminal history, his negative institutional behavior, his unstable social history, his lack of insight, and his negative psychological profile were more probative of a danger to the public should Petitioner be released.  The state courts' determination that there was some evidence to support the Board's 2008 decision is not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record.  Accordingly, federal habeas corpus relief is unavailable.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     The instant petition for writ of habeas corpus be DENIED; and

2.     The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:**   **September 3, 2010**              _____**/s/ Gary S. Austin**_____
                                                  UNITED STATES MAGISTRATE JUDGE